UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| KEISHA NACHELLE TILLETT, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY, )<br>*Commissioner of the Social* )<br>*Security Administration*, )<br>)<br>)<br>Defendant. | NO. 5:22-CV-00213-MAS |

**MEMORANDUM OPINION & ORDER**

Keisha Nachelle Tillett ("Tillett") appeals the Commissioner's denial of her application or Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The Court addresses the parties' competing summary judgment motions. [DE 15 and 17]. For the reasons outlined below, the Court finds that Administrative Law Judge ("ALJ") Greg Holsclaw's decision was supported by substantial evidence and will grant the Commissioner's motion for summary judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  PROCEDURAL HISTORY

Tillett filed an application for SSI, under Title XVI of the Social Security Act on November 6, 2020.[1] [Administrative Transcript ("Tr.") at 18, 189-195, found at DE 11-1]. Tillett alleged disability beginning on June 18, 2015, due to fibromyalgia, depression, and anxiety. [Tr. at 79, 204]. The Social Security Administration denied Tillett's claim initially on March 23, 2021, and again upon reconsideration on September 27, 2021. [Tr. at 87, 96]. ALJ Holsclaw held a hearing on February 22, 2022, and he issued an unfavorable decision dated March 24, 2022, concluding that Tillett was not disabled. [Tr. at 15-33, 34-77]. The Appeals Council then declined Plaintiff's request for review [Tr. at 1-7], making the ALJ's March 2022, decision the final agency decision for purposes of judicial review. 20 C.F.R. §§ 416.1481, 422.210(a). This appeal followed.

### B.  PERSONAL AND MEDICAL HISTORY

Tillett was 33 years old on the date that the ALJ issued his decision. [Tr. at 27, 29]. Tillett she obtained a GED in 2007. [Tr. at 205]. She previously worked in a daycare; however, the ALJ found that none of the work that she performed produced

---

[1] "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court generally references SSI and disability insurance benefits case law interchangeably, mindful of the particular regulations pertinent to each type of claim.

2

sufficient income to constitute substantial gainful activity to as to qualify for past relevant work.

A brief summary of the pertinent medical records is as follows:

Tillett treated with Bates, Miller, and Sims, PLLC, for primary care from February 19, 2020, through October 27, 2021. [Tr. at 253-269, 396-454, 581-601]. Tillett's records reflect a diagnosis of fibromyalgia dating back to 2015. Michelle Martin, PA-C, referred Tillett to a rheumatologist, Dr. Mansoor Ahmed. [Tr. at 255-57]. Dr. Ahmed examined Tillett on October 1, 2020, noting mostly normal functioning but had the following findings: right and left MTP joint (foot) tenderness, right and left knee joint tenderness and tibio-femoral crepitus, tenderness in the right and left CMC, MCP, PIP, and DIP joints (thumbs/fingers), and tenderness in the lumbar spine. [Tr. at 256]. His diagnosis was polyarthritis (unspecified), fibromyalgia, chronic fatigue, unspecified, and other specific disorders involving the immune mechanism not elsewhere classified. [Tr. at 256].

Dr. Ahmed continued to see Tillett through March 4, 2021, with similar complaints and no new diagnoses or treatment. [Tr. at 374]. At the March 4, 2021, visit, Tillett complained of "generalized arthralgias and myalgias affecting all four quadrants of the body. No definite muscle weakness is described. Difficulty falling asleep, staying asleep and having unrefreshed sleep also reported. Energy level is described as low to average." [Tr. at 376]. Dr. Ahmed recommended she increase her dose of Cymbalta and start Tizanidine and Tylenol Arthritis as needed.

3

C. **MEDICAL SOURCE OPINIONS**

Jennifer Fishkoff, Psy.D. performed consultative examination at the agency's request on March 11, 2021. [Tr. at 387-93]. Dr. Fishkoff observed that Tillett was able to express herself during the exam and did not appear to be in pain based on nonverbal behaviors. [Tr. at 388]. Dr. Fishkoff noted that Tillett reported that as her stress increases so does her pain, and that she has on-going pain all over. [Tr. at 391-92]. Dr. Fishkoff diagnosed Tillett with major depressive disorder, recurrent, without psychotic features in partial remission; unspecified anxiety disorder; fibromyalgia; polyarthritis and primary generalized osteoarthritis; and chronic pain. [Tr. at 392]. Dr. Fishkoff concluded Tillett could tolerate the pressures of day-to-day work from a mental impairment perspective but did not provide an opinion on any physical impairments. [Tr. at 393].

Three other doctors provided non-examining medical source opinions: M. Fountain, M.D., on January 19, 2021, finding that Tillett was limited to light work; Jean Sutherland, M.D., on March 23, 2021, who agreed with Dr. Fountain, and Kay Barnfield, Psy.D., who also found that Tillett was capable of light work. [Tr. at 78-106].

D. **ALJ'S DECISION**

The ALJ found that Tillett had the severe impairments of polyarthritis/polyarthralgia, fibromyalgia, depression, anxiety, borderline personality disorder, and posttraumatic stress disorder, but found that her other physical impairments, including tremor from medication, migraine headaches, as galactorrhea, considered individually and in combination, do not impose more than a

4

slight or minimal limitation in Tillett's ability to perform basic work-related activities on a sustained basis and are not "severe" within the meaning of the Social Security Act. [Tr. at 20-21]. The ALJ designated the latter impairments "not severe" and considered them in combination with the severe impairments in defining Tillett's RFC. The ALJ concluded that although Tillett had severe impairments within the meaning of the applicable regulations, Tillett does not have any impairments or combination of impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926).

The ALJ went on to find that Tillett could perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations (among others): no lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than six hours out of an eight-hour day; no sitting more than six hours out of an eight-hour day; occasional crawling or climbing ramps, stairs, ladders, ropes, or scaffolds; no work in areas of concentrated heat, cold, humidity, or vibration, and no more than simple, routine work. [Tr. at 23]. Based on these limitations, the ALJ asked the vocational expert ("VE") if jobs exit in the national economy for an individual with Tillett's age, education, work experience, and RFC. Based on the VE's resulting testimony, the ALJ found that Tillett could not perform her past work but could perform the requirements of representative unskilled light work such as photocopy machine operator, marker, or inserting machine operator that exist in significant

numbers in the national economy. [Tr. at 28]. Thus, the ALJ determined Tillett is not disabled under the Social Security Act. [Tr. at 28].

## I. LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire (lengthy) record in search for facts supporting under-developed arguments. [*See* DE 16 (General Order No. 13-7) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not

6

undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

> For context, the Court briefly outlines the proper five-step sequential analysis as conducted by an ALJ in determining disability status. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 416.920(a), 404.1520(a). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's residual functional capacity ("RFC") and assesses whether the claimant can perform past relevant work. *Id.* at §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p ("SSR 16-3p"). A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p.

7

*Sikes v. Kijakazi*, 2021 WL 3553490, at *9 (W.D. Ky. Aug. 11, 2021).

Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there.

## II. ANALYSIS

### A. THE RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Tillett contends the ALJ's RFC finding is not supported by substantial evidence because he improperly considered her fibromyalgia in his analysis. The ALJ included the following language discussing fibromyalgia and Social Security Rule 12-2p, which specifically addresses the condition:

> In regards to fibromyalgia, it cannot meet a listing in Appendix 1 because fibromyalgia is not a listed impairment. However, the undersigned has considered the claimant's fibromyalgia under Social Security Ruling 12-2p, which instructs adjudicators to consider the effects of fibromyalgia; not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When fibromyalgia is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from fibromyalgia in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairment identified.

[Tr. at 22]. The ALJ noted Tillett "testified that low back pain from fibromyalgia limits her the most" and "testified she was limited primarily by the symptoms of fibromyalgia" but rejected her testimony as "not fully consistent with the evidence." [Tr. at 24 and 26]. The ALJ concluded that the limitations from Tillett's

8

polyarthritis/polyarthralgia and fibromyalgia were accounted for by restricting her to postural, environmental, and noise restrictions in addition to the already reduced RFC for light work. [Tr. at 25]. The ALJ further noted that he accounted for the mental effects of Tillett's fibromyalgia in the mental RFC. [Tr. at 25].

Tillett argues that the ALJ fundamentally misunderstood the waxing and waning nature of fibromyalgia symptoms, and that the disease may manifest in typical muscle strength, as recognized by the Sixth Circuit in *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011). The Commissioner responded that Tillett failed to show any legal error in the ALJ's decision because the ALJ stated that he had considered limitations from both Plaintiff's fibromyalgia and polyarthritis/polyarthralgia, and then the ALJ analyzed Tillett's medical records noting the presence of tender points, areas of widespread tenderness, as well as the lack of weakness. [Tr. at 24]. Next the ALJ complied with the guidance in SSR 12-2p requiring him to consider other evidence when assessing functional limitations if the objective medical evidence does not substantiate a claimant's statements.

In *Ross v. Saul*, 2020 WL 7634160 (E.D. Ky. Dec. 22, 2020), cited by Tillett, the district court did

> not agree with Plaintiff's unsupported contention that the ALJ's search for "traditional objective medical signs ... [was] contrary to SSR 12-2p" (DE 12-1 at 14). SSR 12-2p recognizes the need to accommodate a relative dearth of objective evidence in fibromyalgia claims. However, "[a]s with any claim for disability benefits, before [SSA finds] that a person with an MDI of [fibromyalgia] is disabled, [it] must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity."

*Ross v. Saul*, 2020 WL 7634160, at *8 (E.D. Ky., Dec. 22, 2020) (quoting SSR 12-2p).

9

However, the ALJ did not, as Tillett alleges, focus only on objective findings or the lack thereof. He did support his determination with objective findings from Dr. Ahmed's report, including a lack of definite muscle weakness. The ALJ also considered Dr. Ahmed's findings of multiple tender points and widespread tenderness in Tillett's favor. [Tr. at 24-25]. In addition to Tillett's reports of pain, the ALJ further considered Tillett's ability to drive, prepare meals, clean, shop in stores, babysit a five-year-old child, shop by phone, count change, and use a checkbook. [Tr. at 24]. Tillett argues this is the type of analysis specifically forbidden by SSR 12-2p. *See Kalmbach*, 409 F. App'x at 864. However, the ALJ did rely on the longitudinal record, both in the specific discussion of diagnosis and treatment in 2020 and 2021, and in noting that there was a five-year gap in any treatment at all after Tillett's initial fibromyalgia diagnosis. [Tr. at 24-25].

"Although the precision on fibromyalgia may have been less than perfect, the ALJ did fairly account for each analytical step in a way the record substantially supports." *Ross*, 2020 WL 7634160 at *9. The ALJ properly accounted for Tillett's fibromyalgia-related limitations by including additional restrictions in the RFC finding; specifically, postural, environmental, and noise restrictions. [Tr. at 25]. Where "substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

B. **THE ALJ PROPERLY CONSIDERED TILLETT'S SUBJECTIVE REPORTS OF HER SYMPTOMS IN RELATION TO THE MEDICAL AND OTHER EVIDENCE**

Tillett's second argument, closely related to her first, is that the ALJ summarized the evidence without providing an adequate explanation as to why Tillett's subjective allegations of pain and other symptoms were rejected. Tillett complains the ALJ's decision is missing good reasons for the rejection and that the ALJ does not point to any genuine inconsistencies between the evidence and Tillett's description of her disabling symptoms.

As part of the ALJ's assessment of Tillett's RFC, he considered whether her reported symptoms were consistent with other evidence. [Tr. 23-27]. Ultimately, the ALJ concluded that while Tillett's medically determinable impairments could reasonably be expected to cause her alleged symptoms; her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Tr. at 24]. The ALJ supported his finding, stating:

> [H]er medical file is not consistent with her allegations of severity because it fails to document more than a conservative level of treatment starting in 2020 but there was a significant gap in treatment from her alleged onset date in 2015 through 2020. Further, her file's lack of evidence of more aggressive treatment, substantial objective findings, history of repeated related hospitalizations or significant findings from specialist[s] suggests the claimant's symptoms and limitations were not as disabling as she alleged.

[TR. at 25]. *See* 20 C.F.R. § 416.929(c)(2) ("[O]bjective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms, and the effect those symptoms . . . may have on [her] ability to work."). The ALJ additionally considered Tillett's mental health

11

records noting her treatment, the situational worsening of her condition while she pursued a relationship, the exhibition of borderline personality traits and its impact on her interactions with her neighbor, her generally normal mental status examination findings after her March 2021 consultative examination, and her ability to babysit her friend's child. [Tr. at 25]. Finally, the ALJ considered that Tillett's subjective complaints were not supported by her retained ability to drive, care for six animals, prepare meals, dust, mop, clean, shop in stores, babysit a five-year-old child, count change, and pay bills, among other task of daily living. [TR at 26-27].

All of these explanations from the ALJ more than sufficiently counter Tillett's argument that the ALJ did not provide adequate explanation or good reasons within the requirements of the regulations for discounting Tillett's subjective allegations. These explanations likewise address inconsistencies between the evidence in the record and Tillett's description of her symptoms. For example, the ALJ noted that Tillett reported her low back pain was her most limiting symptom, but that she had only had conservative treatment since 2020 and no treatment between 2015 and 2020. [Tr. at 24-25].

When reviewing the Commissioner's disability conclusion, we are "limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Makela v. Comm'r of Soc. Sec.*, 2022 WL 9838285, at *3 (6th Cir. 2022) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Court finds the ALJ's evaluation of Tillett's subjective complaints was

reasonable and supported by the record; therefore, the Court will not disturb the ALJ's ruling.

### III.  CONCLUSION

For the reasons stated above, and the Court being sufficiently advised, **IT IS ORDERED** that the Commissioner's motion for summary judgment [DE 17] is **GRANTED** and Tillett's competing motion for summary judgment [15] is **DENIED**. A corresponding Judgment will follow.

Entered this 28th of February, 2024.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY